7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**JUL 2 5 2000**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| AMELIA YANEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-00-093 |
| | § | |
| LEVI STRAUSS & CO., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT LEVI STRAUSS & CO.'S RESPONSE
## TO PLAINTIFF'S MOTION TO REMAND AND MOTION FOR SANCTIONS

NOW COMES Levi Strauss & Co.("LS&CO."), Defendant in the above-entitled and

numbered action and, in accordance with Local Court Rule 6(e), hereby submits its Response to

Plaintiff's Motion to Remand and Motion for Sanctions and in support thereof would respectfully

show the following:

### FACTUAL BACKGROUND

Amelia Yanez ("Yanez") began her employment with LS&CO. on March 21, 1990 and

worked as a sewing machine operator at the Harlingen, Texas facility. (*See* Plaintiff's Original

Petition, ¶ II.). During her employment, she reported three on-the-job injuries, the last of which

occurred on May 27, 1994. (*Id.* at ¶¶ II. & III and Defendant's Notice of Removal, Tab 4.).

Following this injury, Yanez' doctor placed her under certain restrictions which LS&CO. was able

to accommodate. (*See* Defendant's Notice of Removal, Tab 4). On October 31, 1994, however, her

doctor restricted her from performing any work. (*Id.*). Consequently, LS&CO. placed her on a leave

of absence (LOA) effective November 1, 1994. (*Id.*).

The Harlingen facility had an Employee Handbook which contained numerous work related policies including one dealing with leaves of absence. (*See* Affidavit of Nate Garlington at Tab A hereto). Under this policy, an employee could be granted a 30 day LOA with the right to obtain subsequent extensions up to 120 days or 4 months. (*Id.*).

Because the facility was also unionized, LS&CO. had entered into a collective bargaining agreement ("CBA") with the Union of NeedleTrades, Industrial and Textile Employees ("UNITE"). (*See* Defendant's Notice of Removal, Tab 1). The CBA contained a number of work related policies including one dealing with leaves of absence. (*Id.*). Like its counterpart in the Employee Handbook, the CBA's LOA policy provided that an employee could be granted a 30 day LOA with the right to obtain extensions. (*Id.*). The only difference was that under the CBA, an employee was given the opportunity to seek an LOA up to a maximum of twelve (12) months. (*Id.*). Notwithstanding its reference to a twelve (12) month maximum LOA, this policy did not address or even mention the issue of termination. (*Id.*).

Between November 1, 1994 and November 1, 1995, Yanez sought and was granted numerous extensions of her LOA. (*See* Defendant's Notice of Removal, Tab 4). On November 2, 1995, she was still under medical restrictions which precluded her from performing any kind of work. (*Id.*). Accordingly, Yanez was terminated that same day. (*Id.*).

## PROCEDURAL HISTORY

On October 22, 1997, Yanez filed the present lawsuit in state court alleging that she had been wrongfully discharged in violation of § 451 of the Texas Labor Code. On November 21, 1997, LS&CO. filed an Answer denying that it had discriminated against Yanez on account of her workers' compensation injury.

-2-

For the next fifteen (15) months, Yanez did nothing to prosecute this case. Consequently, on January 21, 1999, the Court placed it on its dismissal docket. Shortly thereafter, Yanez filed a Motion to Reinstate Dismissed Case and a Motion for Trial Setting. Based on her counsel's representations as stated therein, the Court entered an Order setting the case for trial on November 8, 1999. In order to prepare for trial, LS&CO. attempted to take her deposition on two separate occasions. Yanez, however, refused to make herself available. As a result, on September 24, 1999, she and her counsel agreed to continue the trial setting.

During the next two (2) months, Yanez once again did nothing to prosecute her case. Consequently, on November 12, 1999, LS&CO. moved to depose her and offered her counsel three alternative dates for her deposition. Once again, Yanez did not make herself available on any of the suggested dates.

By the beginning of this year, the Harlingen facility had already closed. Therefore, in an effort to move this case along, LS&CO. requested that the Court set it for trial. On January 6, 2000, the Court scheduled a May 8, 2000 trial date. Once again, LS&CO. noticed Yanez for her deposition for February 23, 2000 and once again, she failed to make herself available. Finding no other alternative, LS&CO., on February 28, 2000, filed a Motion to Dismiss for Want of Prosecution. On April 5th, the Court ordered Yanez to appear for deposition by May 31, 2000.

On May 23, 2000, just eight (8) days before the Court's deadline, Yanez finally appeared for deposition. During the deposition, she alleged, among other things, that LS&CO had violated certain provisions of the CBA in effect at the time when it terminated her employment. Based on her sworn deposition testimony and because of the similarity of issues between this case and *Trevino v. LS&CO. & Mike Ramos*, which was still pending in part before the Fifth Circuit Court of Appeals,

LS&CO., on June 22, 2000, removed the case under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.[1]

On or about July 7, 2000, Yanez filed her Motion to Remand and Motion for Sanctions. In her Motion, Yanez seeks remand on one ground only; that is, LS&CO.'s removal is untimely because in her Original Petition, which was filed two and one half (2 ½) years ago, she specifically complained about LS&CO.'s "absence control policy." Incredibly, Yanez also seeks sanctions because she claims that LS&CO.'s removal has caused her severe injustice, delay and hardship. LS&CO. submits that Yanez' Motion to Remand and Motion for Sanctions is not well taken and should be denied.

## DISCUSSION

**I.**     **LS&CO.'s Removal Was Timely Filed**

In order to prevail on her untimeliness argument, Yanez has to establish that there is language in her October 22, 1997 Original Petition which clearly presents a question of federal law. This is what has been referred to as the "well pleaded complaint" rule which holds that in order to remove a case, "a right or immunity created by the [Federal] Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank*, 299 U.S. 109, 112 (1936). The Supreme Court in *Gully* went on to state:

> A genuine and present controversy, not merely a possible or conjectural one, must exist with reference hereto and the controversy must be disclosed upon the fact of the complaint, **unaided by the answer or by the petition for removal**. Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

---

[1] On June 26, 2000, the Fifth Circuit denied LS&CO.'s Petition for Rehearing En Banc in *Trevino*. Because LS&CO. believes that *Trevino* was incorrectly decided in several fundamental respects, it intends to pursue a Petition for Writ of Certiorari before the United States Supreme Court.

*Id.* at 113. (*emphasis added*);

Since *Gully*, countless courts have cited and followed the "well pleaded complaint rule." *See Franchise Tax Bd. V. Construction Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) ("Whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, **unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.**") (*emphasis added*); *Catepillar, Inc. v. Williams*, 482 U.S. 386, 392 ("The presence or absence of federal-question jurisdiction is governed by the "well pleaded complaint rule" which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."); *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997) ("Under the "well pleaded complaint" rule, as discussed in *Franchise Tax Bd. V. Construction Laborers Vacation Trust* [citation omitted], a movant may not remove a case to federal court unless the plaintiff's complaint establishes that the cause of action arises under federal law.") and *Kramer v. Smith Barney*, 80 F.3d 1080, 1082 (5th Cir. 1996) ("Under the well-pleaded complaint rule, a case does not "arise under" federal law and is not removable if the complaint asserts only state law causes of action. **Nor will an anticipated federal defense, including a defense of preemption, support removal.**") (*emphasis added*).

In examining the language of her Original Petition, Yanez clearly asserts a claim under Section 451 of the Texas Labor Code. *See* Plaintiff's Original Petition, ¶ III. In fact, as if to emphasize the point, her counsel titles the section "WORKER'S COMPENSATION RETALIATION" and sets out the specific language of the statute. *Id.* Moreover, nowhere in her Petition does she make a reference to any type of a federal claim as is required by the "well pleaded

complaint" rule. Finally, there is no specific amount of damages plead in order to satisfy the requisites for diversity jurisdiction and in fact, LS&CO. would show that claims arising under a state's workers' compensation laws cannot be removed on the grounds of diversity. *Sherrod v. American Airlines, Inc.* 132 F.3d 1112 (5th Cir. 1998).

In spite of all these stumbling blocks, Yanez now claims that because LS&CO.'s Notice [of Removal] is based on an absence control policy and her Original Petition expressly referenced a dispute involving such a policy, it should have removed this case within thirty (30) days of filing suit. Unfortunately for Yanez, her timeliness argument fails for three obvious reasons. First, LS&CO.'s Notice of Removal was not solely based on the leave of absence found in Article XI of the CBA; rather, it specifically referenced her deposition testimony in which she also claimed that LS&CO. violated Article V, Sections 8 and 9, dealing with accommodations and seniority when it terminated her employment. *See* Notice of Removal, ¶ ¶ 7-11, pp. 3-6. Second, as established herein above, at the time of her termination, there were two LOA policies in place at the Harlingen facility, one in the Employee Handbook and the other in the CBA. Furthermore, neither of them referenced or addressed the issue of termination which is her main complaint in this case. Consequently, it was not clear from the face of her Petition which policy she was disputing. Finally, the only way LS&CO. could have removed this case back in 1997 would have been to raise preemption as an affirmative defense. To do so, however, would have violated "well pleaded complaint" rule and undoubtably subjected LS&CO. to sanctions at that time. For these reasons, LS&CO. properly waited until it deposed Yanez and elicited testimony regarding her specific claims before removing this case under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

**II.        LS&CO.'s Removal Was Warranted And Therefore Reasonable**

At the time it removed this case, the Fifth Circuit had not yet ruled on LS&CO.'s pending

Petition for Rehearing En Banc in *Augustina Trevino, et al., v. Mike Ramos and Levi Strauss & Co.*,

197 F.3d 777 (5th Cir. 1999). Furthermore, even though the Fifth Circuit has since denied

LS&CO.'s Petition request, *Trevino*, as a panel decision, cannot overrule prior precedent from the

Court which has upheld preemption of Section 451 claims. *See Medrano v. Excel Corp.*, 985 F.2d

230 (5th Cir.), *cert. denied*, 510 U.S. 822 (1993); *Parham v. Carrier Corp.*, 9 F.3d 383 (5th Cir.

1993); *Thomas v. LTV Corp.*, 39 F.3d 611 (5th Cir. 1994); and *Arredondo v. Southwestern Bell Tel.

Co.*, 108 F.3d 333 (table), No. 96-40304, slip op. at 3-4 (5th Cir. Jan. 28, 1997) (*See* copy at Tab B

hereto).[2]  *See Macktal v. United States Dep't of Labor*, 171 F.3d 323, 328 (5th Cir. 1999) ("This

court adheres strictly to the maxim that one panel of the court cannot overturn another, even if it

disagrees with the prior panel's holding'"). Finally, aside from *Trevino*, at the time of removal, there

was (and continues to be) another case pending in the Southern District of Texas which involves

nearly identical preemption issues under Section 301. *See Consuelo Cordova v. Levi Strauss & Co.*,

Civil Action No. M-99-051.

Because Yanez specifically alleged during her deposition that LS&CO. violated various

provisions of the CBA, her claims in this case will require an interpretation of the CBA. Therefore,

LS&CO. was warranted and acted reasonable in removing this case under Section 301.[3]  *See Smith

Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1194 (5th Cir. 1994) (Merely because [a party]

and their counsel were mistaken as to the law does not mean that the mistake was unreasonable.

---

[2] Although *Arredondo* is unpublished, it may be cited and is persuasive authority.  5th Cir. Local Rule 47.5.4.

[3] In light of the procedural history of this case, especially the numerous delays, non-appearances for deposition and extensions by Yanez, she should be embarrassed to argue that LS&CO.'s removal caused her severe injustice, delay and hardship.

Rule 11 does not make the signature of a pleading or other covered document an absolute guarantee as to the correctness of the theory, but only that "reasonable inquiry" has been made in that respect. Moreover, Rule 11 allows for "a good faith argument for the extension, modification, or reversal of existing law.).

## REQUEST FOR HEARING

Because of the complexity of the issues surrounding this case, especially the Section 301 preemption claim and the Fifth Circuit's inconsistent ruling in *Trevino*, LS&CO. hereby joins Yanez is requesting a hearing on this matter.

## CONCLUSION

Based on the foregoing arguments and authorities, LS&CO. respectfully requests that the Court deny Plaintiff's Motion to Remand and Motion for Sanctions.

Dated: July 22, 2000                    Respectfully submitted,

_____

Mario A. Barrera
Attorney-in-Charge
State Bar No. 01805915
Southern District No. 2238
BRACEWELL & PATTERSON, L.L.P.
800 One Alamo Center
106 South St. Mary's Street
San Antonio, Texas 78205
Telephone: (210) 226-1166
Facsimile: (210) 226-1133

ATTORNEYS FOR DEFENDANT
LEVI STRAUSS & CO.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Defendant Levi Strauss & Co.'s Response to Plaintiff's Motion to Remand and Motion for Sanctions is being sent by certified mail, return receipt requested, to counsel for Plaintiff, Aaron Peña, Jr., Aaron Peña & Associates, 1110 South Closner, Edinburg, Texas 78539 on the 22nd day of July, 2000.

Mario A. Barrera

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

AMELIA YANEZ,                         §
                                      §
        Plaintiff,                    §
                                      §
v.                                    §       CIVIL ACTION NO. B-00-093
                                      §
LEVI STRAUSS & CO.,                   §
                                      §
        Defendant.                    §

## <u>ORDER DENYING PLAINTIFF'S MOTION TO REMAND</u>
## <u>AND MOTION FOR SANCTIONS</u>

On this date Plaintiff's Motion To Remand and Motions for Sanctions came on for

consideration.  The Court, having considered the arguments of counsel and the pleadings and

evidence on file, has concluded that Plaintiff's motion lacks merit and should be denied.  It is,

therefore,

ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion to Remand and Motion

for Sanctions is hereby Denied.

Dated:_____, 2000.


                                    _____
                                    UNITED STATES MAGISTRATE JUDGE

523054

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

## AFFIDAVIT OF NATE GARLINGTON

BEFORE ME, the undersigned authority, personally appeared on this date, Nate Garlington, who, after having been duly sworn under oath, stated the following, based on his personal knowledge:

1.      My name is Nate Garlington.  I am over the age of eighteen (18) years of age and have never been convicted of a crime.  I am authorized to make this Affidavit.

2.      I am currently employed by Levi Strauss & Co. ("LS&CO.") as the Regional Human Resources Manager at the Company's regional office, located at 18383 Preston Road, Suite 310, Dallas, Texas  75252.  I have worked with Levi Strauss & Co. for twelve (12) years.

3.      As the Regional Human Resources Manger, my job duties and responsibilities include monitoring the human resource functions at each of the Company's facilities. Prior to its closure on October 21, 1999, I oversaw the Harlingen, Texas facility.  That facility had a leave of absence policy which was contained in both the Employee Handbook and a collective bargaining agreement entered into between LS&CO. and the Union of Needletrades, Industrial and Textile Employees (UNITE), AFL-CIO, CLC.  A true and correct copy of the leave of absence policy set forth in the Employee Handbook is attached.

4.      I have read this affidavit which consists of two pages, including this page, and have been given the opportunity to make any corrections.  I have given this

affidavit voluntarily and of my own free choice and, by my signature below, swear that it is true and correct.

_7-19-00_

**Date**

_Nate Garlington_

Nate Garlington

SWORN TO AND SUBSCRIBED before me the undersigned notary public by the aforesaid Nate Garlington on this _19_ day of July, 2000, to certify which witness my hand and seal of office.

Notary Public, in and for the State of Texas

My commission expires: _____

SANDRA L. GROSS
Notary Public
State of Texas
My Comm. Exp. 05-23-00

522637



CVisPDF - www.fsviso.com

## EMPLOYEE PURCHASES

At designated times we will sell to all employees merchandise manufactured by Levi Strauss & Co., at special employee prices. In fairness to the stores who buy our products, we ask that you purchase these products only for the use of yourself or your immediate family.

## GRUNBAUM LOAN FUND

To provide financial assistance in cases of emergencies the Grunbaum Loan Fund has been established. The maximum amount which employees can borrow at one time is normally one week's net pay. These loans are interest free and are granted by management based on the merits of each case and the availability of funds. Your Supervisor can provide complete details, if needed.

## BEREAVEMENT PAY

The Company will provide up to three days pay to those of us who unfortunately suffer the death of a member of our immediate family (spouse, parent, brother, sister, child, grandchild, grandparent, mother-in-law, or father-in-law) for time missed from regular workdays. This pay will normally be for the day before the funeral, the day of the funeral and the day after the funeral.

## EDUCATION REIMBURSEMENT

To aid and encourage our employees in furthering their own education, an Education Reimbursement program is provided. Under this program an employee attending approved courses may be eligible for reimbursement of certain educational expenses. Details of this program are available through your Plant Manager or Plant Personnel Manager.

## LEAVES OF ABSENCE

While we don't encourage leaves of absence, we recognize there are unusual occasions usually involving your health, when they will be justified. Each case must be determined on its merit by the Plant Manager. The following are some rules to be used as a guide.

The maximum period for a leave of absence is normally 30 days but an extension may be granted when justified by the circumstances.

You must be employed 60 days in order to qualify for a leave of absence. If you want a leave of absence, contact your supervisor who will discuss your request with the Plant Manager.

## PROBATIONARY PERIOD

Newly hired employees shall, for the first (60) calendar days, be considered probationary employees. During this period the Company is under no obligation to recognize your seniority. Probationary employees are not entitled to most benefits. Probationary employees may be terminated without regard to oral or written reprimands during the probationary period. However it is still our philosophy that they be treated justly with dignity and respect.

## JURY DUTY

Jury service is an obligation of good citizenship and your Company wants to co-operate in serving the community. If you are called for jury duty, notify your supervisor or manager immediately.

The Company will pay you the difference between compensation received for jury duty and your average hourly rate if paid for time as a member of a jury.

If you are released from jury duty prior to the end of the workday, you are required to report to work.

## REST PERIODS

To provide time for you to relax, there are ten minute rest periods in the first half and second half of your workshift. Because the rest periods are staggered and others are working, you are not to talk to or interfere in any way with other employees who are still at their jobs.

## HOLIDAYS

The following holidays are observed during the year:

New Year's Day, Washington's Birthday, Good Friday, Monday after Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving, day after Thanksgiving, and Christmas. You are eligible for holiday pay after 60 days continuous employment. You must work the working day before and after the holiday to receive holiday payment, if there is work available. In case you are ill or there is a death in the immediate family, which requires you to be absent on either one of these days, you will receive holiday pay on receipt of satisfactory proof to management. Holiday pay will be computed at eight times your average hourly earnings.



An employee who needs to have an operation must request a leave of absence from the Plant Manager before entering the hospital. In case of emergency, you or a member of the family should contact the Plant Manager as soon as possible.

At the expiration of a leave of not more than sixty days, the Company will return you to your same machine. If you return after sixty days on leave, but less than one hundred-twenty days you shall be returned to the same job or operation.

# COMMUNICATIONS—EMPLOYEE AND CO.

Freedom of communication between your Company and yourself is essential to the good of the business and the job satisfaction of all of us.



Most of us have a question or problem at some time. If you do, remember the only way we can answer your question or solve your problem is for you to tell us about it and talk it over with us.

If you have a question or a problem, talk to your supervisor. Your supervisor knows more about you and your job than any other member of management, and is in the best position to handle your questions properly and satisfactorily. If satisfaction is not obtained, your manager is always willing to listen to you and endeavor to reach a fair and acceptable solution.

# TRANSFERS

If you are permanently assigned or transferred to a vacancy which exists on any machine or operation, you will be given a retraining allowance. The allowance is intended to provide you with earnings protection while you are learning the new operation.

If you are temporarily transferred or assigned an operation different from your regular operation, you will be paid your average hourly rate or your piece-work earnings for that job, whichever is greater.

Due to our diversified business, it may be necessary that many employees learn more than one job, and in many cases, you may be assigned to two or more jobs which are to be considered your regular job.

When a new style becomes popular, our production must be adjusted to give our customers what they want. Therefore, you may be assigned to another garment. You will then be paid your piece-work earnings, average hourly rate, or a retraining allowance, depending upon the complexity of the change involved.

Because of the many requirements involved in running a plant, the decision on a transfer must rest with management.

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS

FILED

JAN 2 8 1997

CHARLES R. FULBRUGE III
CLERK

No. 96-40304

SIXTO ARREDONDO and AURORA ARREDONDO,

Plaintiffs-Appellants,

versus

SOUTHWESTERN BELL TELEPHONE COMPANY,

Defendant-Appellee.

Appeal from the United States District Court for
the Southern District of Texas
(B-91-CV-51)

Before REAVLEY, GARWOOD and BENAVIDES, Circuit Judges.

REAVLEY, Circuit Judge:[*]

Sixto Arredondo appeals the district court's order granting
Southwestern Bell Telephone's motion for summary judgment.[1]
Arredondo argues that the district court erred by: (1) not
remanding the action to state court; (2) denying Arredondo leave to
amend his complaint; (3) granting summary judgment on his wrongful
termination claim when there existed a genuine fact issue; and (4)

---

[*] Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

[1] Arredondo's wife, Aurora Arredondo, is also an appellant in
this action but, for the sake of convenience, will not be referred
to in this opinion.

applying the wrong legal standard. We hold that the district court did not err and affirm.

On March 8, 1987, Sixto Arredondo, an employee of Southwestern Bell, suffered an injury while riding a bus to a training seminar. Arredondo received disability benefits under Southwestern Bell's Sickness and Accident Disability Benefit Plan, supplemented by workers' compensation benefits, until May 20, 1987 when Arredondo returned to work on light duty status. On August 24, 1988, Arredondo claimed a relapse of the original injury and ceased working. Southwestern Bell's Employee Benefit Committee received some medical information from Arredondo's doctor regarding his injury, but this information indicated that Arredondo was not totally disabled and could engage in light duties. Southwestern Bell repeatedly requested a second medical opinion, but the benefit committee never received sufficient medical substantiation of Arredondo's inability to work as required by the company's benefit plan.

On June 15, 1989, the Employee Benefit Committee denied Arredondo disability benefits for the alleged relapse because he failed to comply with its requests for additional medical information and because the medical information available indicated that Arredondo could perform certain duties. Arredondo's supervisor advised him to return to work, which Arredondo did, but the supervisor sent him home because he seemed unable to work. Arredondo was informed that he could still get a second medical opinion regarding his injury, but he never did. Arredondo was

2

given a final opportunity to return to work, but his lawyer called to inform the company that his client was suffering from chest pains and would not be able to return. After Arredondo failed to appear for work, Southwestern Bell terminated his employment. Arredondo was notified of his termination on September 25, 1989, effective as of February 21, 1989.

Arredondo filed suit is state court alleging that Southwestern Bell had wrongfully terminated his employment in retaliation for filing a workers' compensation claim in violation of Article 8307c of the Texas Workers' Compensation Act.[2] Arredondo also alleged that Southwestern Bell had "breached the agreement" and wrongfully discharged him "in violation of the contract." In addition to actual and exemplary damages, Arredondo sought reimbursement of employee benefits which would have accrued, including pension and retirement benefits. Southwestern Bell removed the action to federal court based upon federal question jurisdiction, and diversity of citizenship, pursuant to 28 U.S.C. § 1441.

On appeal, Arredondo contends that his sole cause of action arose under the Texas Workers' Compensation Act and, because the claim was non-removable, the district court erroneously retained jurisdiction. Ordinarily, a cause of action arising under state workers' compensation laws cannot be removed to federal court. 28 U.S.C. § 1445(c). However, Arredondo's complaint combined intertwined federal claims with the otherwise non-removable cause

---

[2] Formerly Tex. Rev. Civ. Stat. Ann. art. 8307c § 1 (Vernon 1992); now codified at Tex. Lab. Code Ann. § 451.001 (Vernon 1993).

3

CIMPDF - www.fenrir.com

of action, and the cause must either go to state or federal court.
We conclude that the federal district court could determine all
issues contained there.    In his original pleading, Arredondo
asserted a claim against Southwestern Bell for violating the terms
of the "agreement."   This portion of Arredondo's petition clearly
refers to the company's collective bargaining agreement with the
Communications Workers of America, Arredondo's Union.    Breach of
contract claims with respect to collective bargaining agreements
are automatically preempted by § 301 of the Labor Management
Relations Act (LMRA), 29 U.S.C. § 185(a).   Parham v. Carrier Corp.,
9 F.3d 383, 390 (5th Cir. 1993).

Arredondo also sought damages in the form of pension and
retirement benefits for the alleged breach of contract.    In order
to calculate the amount of these damages, the court would
necessarily have to refer to Southwestern Bell's employee benefit
plan.    A claim is preempted by § 514(a) of the Employment
Retirement Income Security Act (ERISA), 29 U.S.C. § 1144(a), if it
relates to an employee benefit plan.    A claim relates to an ERISA
plan if it has some connection with or reference to such a plan.
Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990).   Where
a court must refer to an ERISA plan to determine retirement
benefits and calculate damages in accordance therewith, the claim
relates to an ERISA plan and is preempted.    See Christopher v.
Mobil Oil Corp., 950 F.2d 1209, 1218-20 (5th Cir.), cert. denied,
113 S.Ct. 68 (1992); Cefalu v. B.F. Goodrich Co., 871 F.2d 1290,
1294 (5th Cir. 1989).

4

Arredondo contends that the district court erred by denying him leave to amend his complaint so as to delete any references to the collective bargaining agreement or the employee benefit plan. Whether a party should be allowed to amend his pleadings is a decision left to the sound discretion of the district court and reviewed for abuse of discretion. Moody v. FMC Corp., 995 F.2d 63, 65 (5th Cir. 1993). Arredondo did not seek leave to amend his complaint until three years after the action had been filed. By that time, discovery had closed, the deadline for dispositive motions had passed, and summary judgment had been granted. In light of the excessive delay and the potential prejudice to Southwestern Bell, we find that the district court did not abuse its discretion by denying Arredondo leave to amend.

Arredondo argues that the district court erred by granting summary judgment to Southwestern Bell on his wrongful termination claim. Arredondo contends that he presented sufficient circumstantial evidence to raise a genuine fact issue as to whether Southwestern Bell terminated his employment in retaliation for filing a workers' compensation claim. In pursuing an article 8307c claim, the plaintiff has the burden of "establishing a causal nexus between his filing of a workers' compensation claim and his discharge by his employer." Parham, 9 F.3d at 386. Arredondo failed to present evidence linking his filing of a workers' compensation claim and his termination.

Arredondo argues that Southwestern Bell's repeated requests for medical substantiation constitute "discriminatory and excessive

5

demands" and are proof of retaliation. Arredondo states that "[i]f
he had not filed the claim, Defendant would not have required the
additional documentation and exhaustive medical opinions."
Arredondo presents no evidence to support this assertion, and the
undisputed evidence shows that medical substantiation is required
by the terms of the employee benefit plan. Arredondo contends that
the requests were excessive. However, there is no evidence that
these requests were inordinate in light of the benefit plan's
requirements or the particulars of the situation. Arredondo
asserts that other employees were not subjected to the same demands
for medical information, but he fails to show that other employees
in his position, namely employees suffering an alleged relapse
after fifteen months, were not required to provide similar
documentation. Furthermore, Arredondo presents no support for the
contention that Southwestern Bell only required extensive
documentation from employees who filed workers' compensation
claims. Finally, Arredondo claims that he complied with
Southwestern Bell's requests for medical substantiation, yet the
record clearly shows that Southwestern Bell never received adequate
documentation of a total inability to work as required by the
benefit plan.

Arredondo asserts that he presented sufficient circumstantial
evidence to survive summary judgment. We disagree. Viewing all
evidence in the light most favorable to Arredondo, and making all
reasonable inferences therefrom, there is simply no evidence of a

CVsPDF - www.fasoo.com

causal connection between Arredondo's termination and his filing a workers' compensation claim over two years earlier.

Finally, Arredondo contends that the district court applied the wrong legal standard in granting Southwestern Bells' motion for summary judgment. Arredondo argues that the district court erroneously applied an "arbitrary and capricious" standard to his sole claim of retaliation. This argument is without merit. The district court properly applied an "arbitrary and capricious" standard in upholding Southwestern Bell's denial of disability benefits. See Duhon v. Texaco, Inc., 15 F.3d 1302, 1305 (5th Cir. 1994)(holding that where a plan administrator is given full and final authority with respect to claims for employee benefits, final decisions are reviewed under an abuse of discretion or "arbitrary and capricious" standard). This determination, however, had no relation to Arredondo's wrongful termination claim.

AFFIRMED.

7